**ALLIED STORES OF OHIO, INC., Appellant, v. BOWERS, Tax Commr.**

U. S. Supreme Court.

Decided February 24, 1959.

Carlton S. Dargusch, Sr., Columbus, for appellant.
William Saxbe, John M. Tobin, Columbus, for appellee.

## OPINION

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

The principal question presented is whether an Ohio Statute that exempts from ad valorem taxation "merchandise or agricultural products belonging to a nonresident * * * if held in a storage warehouse for storage only" denies to appellant, a resident of the State, the equal pro-

tection of the laws guaranteed by the Fourteenth Amendment of the Constitution.

The facts are stipulated. So far as pertinent, they are that appellant, Allied Stores of Ohio, Inc., an Ohio corporation, owns and operates a department store in each of four Ohio cities. It also maintains in each of those cities a private warehouse where it stores stocks of merchandise of the kinds sold in its stores. As needed, merchandise is transferred from the warehouse to the store, and when merchandise is sold by sample in the store—usually a heavy or bulky article—it is delivered from the warehouse directly to the consumer.

Title 57, Page's Ohio Rev. Code Ann. 1953, §5709.01 R. C., provides, inter alia, that "All personal property located and used in business in this state [shall be] subject to taxation, regardless of the residence of the owners thereof. * * *" (Emphasis added.) During the tax year involved another Ohio statute, Title 57, Page's Ohio Rev. Code Ann. 1953, §5701.08(A) R. C., provided, in pertinent part, that:

"As used in Title LVII of the Revised Code:

"(A) Personal property is 'used' within the meaning of 'used in business' * * * when stored or kept on hand as material, parts, products, or merchandise; but merchandise or agricultural products belonging to a nonresident of this state is not used in business in this state if held in a storage warehouse for storage only. * * *"[1] (We have added the emphasis, and, as was done by the Supreme Court of Ohio, we will refer to the emphasized portion as the "proviso.")

Acting under those statutes, appellee, as Tax Commissioner of Ohio, proposed the assessment of an ad valorem tax against appellant based on the average value of the merchandise that it had stored in its four Ohio warehouses during the tax year ending January 31, 1954.[2] Appellant petitioned the Board of Tax Appeals of Ohio for a redetermination, contending that the property stored in its four warehouses in the tax year involved was "merchandise * * * held in a storage warehouse for storage only," within the meaning of §5701.08 (A) R. C., and that because

---

1. The unemphasized portion of the statute was enacted in 1931, 114 Ohio Laws, pp. 714, 716. The emphasized clause was added by the Ohio Legislature at its next session in 1933, 115 Ohio Laws, pp. 548, 553. In September 1955, the section was amended by deleting the emphasized clause and inserting the following: "and merchandise or argicultural products shipped from outside of this state and held in this state in a warehouse or a place of storage for storage only and for shipment outside of this state are not used in business in this state." 126 Ohio Laws, p. 78.

2. The Ohio taxing date is January 1, Title 57, Page's Ohio Rev. Code Ann. 1953, §5711.03. Why the assessment involved was for the year ended January 31, instead of January 1, 1954, is not explained in the record or the briefs. A merchant's personal property is valued for tax purposes "by taking the amount in value on hand, as nearly as possible, in each month of the preceding year in which he has been engaged in business, adding together such amounts, and dividing the aggregate amount by the number of months that he has been in business during such year." Title 57, Page's Ohio Rev. Code Ann. 1953, §5711.15.

the section exempted nonresidents,[3] but taxed residents, on stocks of merchandise so held, it denied to appellant, a resident of Ohio, the equal protection of the laws guaranteed by the Fourteenth Amendment of the Constitution. The Board of Tax Appeals upheld the tax, and so did the Court of Appeals of Cuyahoga County. On appeal, the Supreme Court of Ohio held that appellant lacked standing to raise the constitutional question presented and affirmed the judgment. 166 Oh St 116, 1 O. O. (2d), 342, 140 N. E. (2d), 411. The case comes here on Allied's appeal.

The first and preliminary question thus is whether the Supreme Court of Ohio correctly held that appellant lacked standing to prosecute the constitutional question sought to be presented. It is settled that "[w]hether a pleading sets up a sufficient right of action or defense, grounded on the Constitution or a law of the United States, is necessarily a question of federal law, and, where a case coming from a state court presents that question, this court must determine for itself the sufficiency of the allegations displaying the right or defense, and is not concluded by the view taken of them by the state court." First National Bank of Guthrie Center v. Anderson, 269 U. S. 341, 346, 46 S. Ct. 135, 137, 70 L. Ed. 295; Staub v. City of Baxley, 355 U. S. 313, 318, 78 S. Ct. 277, 280.

In reaching its conclusion, the Ohio court said [166 Oh St 116, 1 O. O. (2d), 342, 140 N. E. (2d), 413] "In our opinion, it is not necessary to consider the constitutional question raised by the taxpayer in the instant case because, if its contention with regard to that question is sound, it necessarily leads to the conclusion that the entire proviso in subdivision (A) of §5701.08 R. C., which read, 'but merchandise or agricultural products belonging to a nonresident of this state is not used in business in this state if held in a storage warehouse for storage only,' was void and should be stricken. That being so, it is apparent that any of taxpayer's 'merchandise * * * held in a storage warehouse for storage only' would be taxable because described by the preceding words remaining in the statute and reading, 'stored * * * as * * * merchandise.'" But the court did not hold that the proviso was invalid, nor did it strike it from the statute. Instead, it held that the proviso expressed the valid legislative purpose to exempt the merchandise and argricultural products of nonresidents when held in a storage warehouse for storage only and that the court was powerless to strike it. In this, the court was following its prior decisions on the question. General Cigar Co. v. Peck, 1953, 159 Oh St 152, 50 O. O. 120, 111 N. E. (2d), 265, and B. F. Goodrich Co. v. Peck, 1954, 161 Oh St 202, 53 O. O. 91, 118 N. E. (2d), 525, had so held. In the latter case the court had answered a contention that the proviso was invalid for undue preference of nonresidents by saying "such an argument should be addressed to the General Assembly and not to this court." 161 Oh St 210, 53 O. O. 95, 118 N. E. (2d), 530. Those

---

3. The Supreme Court of Ohio has held that a foreign corporation, although authorized to do and doing a local business in Ohio, is a nonresident within the meaning of the proviso here in question. B. F. GOODRICH CO. v. PECK, 161 Ohio St. 202, 204, 53 O. O. 91, 92, 118 N. E. (2d), 525.

interpretations, for present purposes, became a part of the proviso. Wheeling Steel Corp. v. Glander, 337 U. S. 562, 566, 69 S. Ct. 1291, 1293, 93 L. Ed. 1544. The proviso is the basis of appellant's claim of denial of the equal protection of the laws. With the proviso thus validly remaining in the statute it is quite immaterial that appellant's claim necessarily would fall if it were out. It follows that appellant does have standing to prosecute its constitutional claim.

This brings us to the merits. Does the proviso exempting "merchandise or agricultural products belonging to a nonresident of the state, the equal protection of for storage only" deny to appellant, a resident of the state, the equal protection of the laws within the meaning of the Fourteenth Amendment? The applicable principles have been often stated and are entirely familiar. The states have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the states have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the states, in the exercise of their taxing power, are subject to the requirements of the equal protection clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation. The state may impose different specific taxes upon different trades and professions and may vary the rate of excise upon various products. It is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. Bell's Gap R. Co. v. Commonwealth of Pennsylvania, 134 U. S. 232, 237, 10 S. Ct. 533, 535, 33 L. Ed. 892; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 293, 18 S. Ct. 594, 598, 42 L. Ed. 1037; Southwestern Oil Co. v. State of Texas 217 U. S. 114, 121, 30 S. Ct. 496, 498, 54 L. Ed. 688; Brown–Forman Co. v. Commonwealth of Kentucky, 217 U. S. 563, 573, 30 S. Ct. 578, 580, 54 L. Ed. 883; Sunday Lake Iron Co. v. Township of Wakefield, 247 U. S. 350, 353, 38 S. Ct. 495, 62 L. Ed. 1154; Heisler v. Thomas Colliery Co., 260 U. S. 245, 255, 43 S. Ct. 83, 84, 67 L. Ed. 237; Oliver Iron Mining Co. v. Lord, 262 U. S. 172, 179, 43 S. Ct. 526, 529, 67 L. Ed. 929; Stebbins v Riley, 268 U. S. 137, 142, 45 S. Ct. 424, 426, 69 L. Ed. 884; Ohio Oil Co. v. Conway, 281 U. S. 146, 159, 50 S. Ct. 310, 313, 74 L. Ed. 775; State Board of Tax Com'rs of Indiana v. Jackson, 283 U. S. 527, 537, 51 S. Ct. 540, 543, 75 L. Ed. 1248. "To hold otherwise would be to subject the essential taxing power of the State to an intolerable supervision, hostile to the basic principles of our government and wholly beyond the protection which the general clause of the Fourteenth Amendment was intended to assure." Ohio Oil Co. v. Conway, supra, 281 U. S. at page 159, 50 S. Ct. at page 314.

But there is a point beyond which the state cannot go without violating the equal protection clause. The state must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification "must rest upon some ground of difference having a fair and substantial relation to the object of the legislation." F. S. Royster Guano Co. v. Common-

wealth of Virginia, 253 U. S. 412, 415, 40 S. Ct. 560, 561, 64 L. Ed. 989; Louisville Gas & Electric Co. v. Coleman, 277 U. S. 32, 37, 48 S. Ct. 423, 425, 72 L. Ed. 770: Air-Way Electric Appliance Corp. v. Day, 266 U. S. 71, 85, 45 S. Ct. 12, 15, 69 L. Ed. 169; Schlesinger v. State of Wisconsin, 270 U. S. 230, 240, 46 S. Ct. 260, 261, 70 L. Ed. 557; Ohio Oil Co. v. Conway, 281 U. S. 146, 160, 50 S. Ct. 310, 314, 74 L. Ed. 775. "If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law." Brown-Forman Co. v. Commonwealth of Kentucky, 217 U. S. 563, 573, 30 S. Ct. 578, 580, 54 L. Ed. 883. State Board of Tax Com'rs of Indiana v. Jackson, 283 U. S. 527, 537, 51 S. Ct. 540, 543, 75 L. Ed. 1248. That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy. American Sugar Refining Co. v. State of Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102; Stebbins v. Riley, 268 U. S. 137, 142, 45 S. Ct 424, 426, 69 L Ed. 884.

Coming directly to the concrete problem now before us, it has repeatedly been held and appears to be entirely settled that a statute which encourages the location within the state of needed and useful industries by exempting them, though not also others, from its taxes is not arbitrary and does not violate the equal protection clause of the Fourteenth Amendment. Bell's Gap R. Co. v. Commonwealth of Pennsylvania, supra, 134 U. S. at page 237, 10 S. Ct. at page 535: Ohio Oil Co. v. Conway, supra, 281 U. S. at page 159, 50 S. Ct. at page 313; Williams v. Mayor and City Council of Baltimore, 289 U. S. 36, 53 S. Ct. 431, 77 L. Ed. 1015; Colgate v. Harvey, 296 U. S. 404, 439, 56 S. Ct. 252, 263, 80 L. Ed. 299 (dissenting opinion). Similarly, it has long been settled that a classification, though discriminatory, is not arbitrary nor violative of the equal protection clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78, 31 S. Ct. 337, 340, 55 L. Ed. 369; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; Rast v. Van Deman & Lewis Co., 240 U. S. 342, 357, 36 S. Ct. 370, 374, 60 L. Ed. 679; State Board of Tax Com'rs of Indiana v. Jackson, supra, 283 U. S. at page 537, 51 S. Ct. at page 543.

In the light of the law thus well settled, how stands appellant's case? We cannot assume that state legislative enactments were adopted arbitrarily or without good reason to further some legitimate policy of the state. What were the special reasons, motives or policies of the Ohio Legislature for adopting the questioned proviso we do not know with certainty, nor is it important that we should, Southwestern Oil Co. v. State of Texas, 217 U. S. 114, 126, 30 S. Ct. 496, 500, 54 L. Ed. 688, for a state legislature need not explicitly declare its purpose. But it is obvious that it may reasonably have been the purpose and policy of the State Legislature, in adopting the proviso, to encourage the construction or leasing and operation of warehouses in Ohio by nonresidents with the attendant benefits to the State's economy, or to stimulate the market for merchandise and agricultural products produced in Ohio by enabling nonresidents to purchase and hold them in the state for storage only,

free from taxes, in anticipation of future needs. Other similar purposes reasonably may be conceived. Therefore, we cannot say that the discrimination of the proviso which exempted only the "merchandise or agricultural products belonging to a nonresident * * * if held in a storage warehouse for storage only" was not founded upon a reasonable distinction, or difference in state policy, or that no state of facts reasonably can be conceived to sustain it. For those reasons, it cannot be said, in the light of the settled law as shown by the cases cited, that the questioned proviso was invidious or palpably arbitrary and denied appellant the equal protection of the laws within the meaning of the Fourteenth Amendment.

Appellant heavily relies on Wheeling Steel Corp. v. Glander, 337 U. S. 562, 69 S. Ct. 1291, 93 L. Ed. 1544. We think that case is not apposite. There Ohio statutes exempted from taxation certain accounts receivable owned by residents of the state but taxed those owned by nonresidents. The statutes, on their face admittedly discriminatory against nonresidents, themselves declared their purpose. That purpose was to proffer to other states a scheme of "reciprocity" for taxing accounts receivable.[4] Ohio argued that the reciprocal character of its statutes eliminated the discriminatory effects against nonresidents, but this court held that it did not. Having themselves specifically declared their purpose, the Ohio statutes left no room to conceive of any other purpose for their existence. And the declared purpose having been found arbitrarily discriminatory against nonresidents, the court could hardly escape the conclusion that "the inequality [was] not because of the slightest difference in Ohio's relation to the decisive transaction, but solely because of the different residence of the owner." 337 U. S. at page 572, 69 S. Ct. at page 1297. As we have shown that is not the situation here. Here the discrimination against residents is not invidious nor palpably arbitrary because, as shown, it rests not upon the "different residence of the owner," but upon a state of facts that reasonably can be conceived to constitute a distinction, or difference in state policy, which the state is not prohibited from separately classifying for purposes of taxation by the equal protection clause of the Fourteenth Amendment.

Affirmed.

---

4. The stated purpose was to proffer to other states a right to tax accounts receivable owned by residents of Ohio that derived from sales of Ohio goods negotiated and consummated in such other States in exchange for a claimed Ohio right to tax the accounts receivable owned by residents of other states that derived from sales of their goods negotiated and consummated in Ohio. "The effect," this court said, "[was] that intangibles of nonresident owners [were] assigned a situs within the taxing reach of Ohio while those of its residents [were] assigned a situs without. [Thus], [t]he exempted intangibles of residents [were] offered up to the taxing power of other states which may embrace this doctrine of a tax situs separate from residence, [but] no other state [ever] sought to take advantage of the 'reciprocity' proffer." WHEELING STEEL CORP. v. GLANDER, SUPRA, 337 U. S. at pages 573-574, 69 S. Ct. at page 1297.

JUSTICE STEWART took no part in the consideration or decision of this case.

JUSTICE BRENNAN, with whom JUSTICE HARLAN joins, concurring.

We hold today that Ohio's ad valorem tax law does not violate the equal protection clause in subjecting the property of Ohio corporations to a tax not applied to identical property of non-Ohio corporations. Yet in Wheeling Steel Corp. v. Glander, 337 U. S. 562, 69 S. Ct. 1291, 93 L. Ed. 1544,[1] the court struck down, as violating the equal protection clause, another provision of Ohio, ad valorem tax law which subjected the property of non-Ohio corporations to a tax not applied to identical property of Ohio corporations.[2]

The question presented in the two cases, if stated generally, and as I shall show, somewhat superficially, is: Measured by the demands of the equal protection clause, is a state constitutionally permitted separately to classify domestic and foreign corporations for the purposes of payment of or exemption from an ad valorem tax? In both cases the distinction complained of as denying equal protection of the laws is that the incidence of the tax in fact turns on "the different residence of the owner." With due respect to my brethren's view, I think that if this were all that the matter was, Wheeling and this case would be indistinguishable.[3] Therefore, while I agree with my brethren that the classification is valid in this case, I cannot reach that conclusion without developing the ground on which Wheeling is distinguishable.

Why is the "different residence of the owner" a constitutionally valid basis for Ohio's freeing the property of the foreign corporation from the tax in this case and an invalid basis for its freeing the property of the domestic corporation from the tax involved in the Wheeling case?

---

1. To the same effect as the WHEELING CASE are SOUTHERN R. CO. v. GREENE, 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, and HANOVER FIRE INS. CO. v. HARDING, 272 U. S. 494, 47 S. Ct. 179, 71 L. Ed. 372.

2. The court distinguished ad valorem property taxes, levied on a foreign corporation permitted to do a local business, from an original entry privilege tax on a foreign corporation. 337 U. S. at pages 571-572, 69 S. Ct. at page 1296. "A corporation which is allowed to come into a state and there carry on its business may claim, as an individual may claim, the protection of the Fourteenth Amendment against a subsequent application to it of state law." CONNECTICUT GENERAL LIFE INS. CO. v. JOHNSON, 303 U. S. 77, 79-80, 58 S. Ct. 436, 437-438, 82 L. Ed. 673.

3. The statute in Wheeling "discriminated" against nonresidents in the same way that the present statute "discriminates" against residents. What my brethren describe as the forbidden purpose of the distinction in Wheeling seems to me clearly to be only a rejected argument made by the state to show that there was no discrimination in fact. 337 U. S. at pages 572-574, 60 S. Ct. at pages 1296-1297. I see no indication in Wheeling that the court's condemnation of the tax was based solely on its rejection of the "reciprocity" argument.

I think that the answer lies in remembering that our Constitution is an instrument of federalism. The Constitution furnishes the structure for the operation of the States with respect to the National Government and with respect to each other. The maintenance of the principles of federalism is a foremost consideration in interpreting any of the pertinent constitutional provisions under which this court examines state action. Because there are 49 States and much of the nation's commercial activity is carried on by enterprises having contacts with more states than one, a common and continuing problem of constitutional interpretation has been that of adjusting the demands of individual states to regulate and tax these enterprises in light of the multistate nature of our federation. While the most ready examples of the court's function in this field are furnished by the innumerable cases in which the court has examined state taxation and regulation under the commerce and due process clauses, still the equal protection clause, among its other roles, operates to maintain this principle of federalism.

Viewing the equal protection clause as an instrument of federalism, the distinction between Wheeling and this case seems to me to be apparent. My brethren's opinion today demonstrates that in dealing with as practical and complex a matter as taxation, the utmost latitude, under the equal protection clause, must be afforded a state in defining categories of classification. But in the case of an ad valorem property tax, Wheeling teaches that a distinction which burdens the property of nonresidents but not like property of residents is outside the constitutional pale. But this is not because no rational ground can be conceived for a classification which discriminates against nonresidents solely because they are nonresidents: could not such a ground be found in the state's benign and beneficient desire to favor its own residents, to increase their prosperity at the expense of outlanders, to protect them from, and give them an advantage over, "foreign" competition? These bases of legislative distinction are adopted in the national policies of too many countries, including from time to time our own, to say that, absolutely considered, they are arbitrary or irrational. The proper analysis, it seems to me, is that Wheeling applied the equal protection clause to give effect to its role to protect our federalism by denying Ohio the power constitutionally to discriminate in favor of its own residents against the residents of other state members of our federation. On the other hand, in the present case, Ohio's classification based on residence operates against Ohio residents and clearly presents no state action disruptive of the federal pattern. There is, therefore, no reason to judge the state action mechanically by the same principles as state efforts to favor residents. As my brethren's opinion makes clear, a rational basis can be found for this exercise by Ohio of the latitude permitted it to define classifications under the equal protection clause. One could, in fact, be found in the concept that it is proper that those who are bound to a state by the tie of residence and accordingly the more permanently receive its benefits are proper persons to bear the primary share of its costs. Accordingly, in this context, it is proper to say that any relief forthcoming must be obtained from the State Legislature.