Abraham J. Gellihoff, J.
The petitioner requests the court to declare void a recently enacted amendment to subdivision 7 of section 242-a of the Election Law, and to enjoin the Board of Elections of the City of New York from implementing it. In substance, the amendment provides that, in the 1970 primary elections in New York City, the names of incumbent candidates for party position and public office shall be listed first on the ballot. Petitioner has not served a summons or complaint. No action has been commenced. “An action is commenced and jurisdiction acquired by service of a summons.” (CPLB 304).
Instead of bringing an action, petitioner has brought this proceeding by order to show cause based upon a petition to which she has annexed as an exhibit a list of other persons who she claims are, like herself, to be voted for at the forthcoming primary. Petitioner is the only one to sign the petition.
The relief petitioner seeks is a declaratory judgment ‘ ‘ invalidating and declaring null and void the aforesaid amendment * * * and enjoining and restraining respondents from printing or placing on voting machines * * * any ballots prepared in accordance with said amendment.” The relief petitioner seeks may not be granted in a proceeding of this nature but must be sought in a plenary action for a judgment declaring the amendment to be unconstitutional and void (see, in this connection, Matter of Sun Oil Co. v. Waldinger, 14 Misc 2d 852, 853; Matter of Supreme Ind. Catering Corp. v. Fuerst, 30 Misc 2d 394, 395).
Petitioner purports to bring this proceeding under the provisions of section 330 of the Election Law. That section gives the court summary jurisdiction to determine any question of law or fact arising out of the “form and contents of official ballots.” It is unnecessary to decide whether that provision vests this court with power summarily to determine the constitutionality ' of a law enacted by the Legislature. For, in any event, as will now be explained, the court lacks jurisdiction even under section 330.
Subdivision 7 of section 330 — the provision relied upon by petitioner — requires that the proceeding be instituted by a “candidate aggrieved.” Neither petitioner, nor any of the other persons enumerated by her, had filed designating petitions when this proceeding was commenced. The petition recites: “ Each of the petitioners has collected or is in the *223 process of collecting a sufficient number of signatures to designate him as a candidate on the ballot in the forthcoming primary.” When the proceeding was commenced petitioner was taking steps to become a candidate, but she was not yet one. She could become a “candidate aggrieved” only after she filed her designating petition. Accordingly, neither she nor the persons named by her have standing to bring this proceeding.
In a proceeding under section 330, it is necessary to obtain jurisdiction over other indispensable parties. The opposing candidates, whose rights would be affected by a determination of petitioners’ application, are indispensable parties (Matter of Mucciolo, 37 N. Y. S. 2d 575, 577; see Matter of Bailey v. Power, 26 Misc 2d 635, 637; Matter of Schwimmer v. Power, 21 A D 2d 835; Matter of Swan v. Cohen, 179 Misc. 69). They have not been served with process herein. They have not even been made parties to the proceeding. The Election Law requirement is strict as to service and joinder of indispensable parties.
In light of the above, the petition and proceedings must be dismissed on the grounds that petitioner lacks standing, there is no jurisdiction over indispensable parties who have not been joined, and the court lacks jurisdiction over the subject matter.
To avoid remanding this case for further proceedings in the event appellate courts were to require it, this court will now render its decision on the merits — on the hypothesis that jurisdiction is here present.
The court finds as a fact that a candidate with top position on the ballot has an advantage. The experts call this ‘ ‘ position bias,” which means that some voters, sometimes, depending upon the importance of the office and upon whether the candidate is known, well known, or less known, will automatically vote for the candidate whose name is on the top line. Statistics show that an incumbent or insurgent may win sometimes when he is on the top line, and sometimes when he is on a lower line. The position on the ballot is not determinative, but in a close election the top position may sometimes provide the winning margin.
Why the position-biased voter casts his ballot for the candidate on the top line has not been established. It varies with each voter. He may do so through nervousness, haste to get it over with, ignorance, indifference or sheer frustration — “ a plague on both your houses; it’s Tweedledum or Tweedledee; it doesn’t matter whom I vote for, so I’ll vote for this candidate because his is the first name I see. ’ ’
*224 Whatever may be the reason for this position bias the petitioner herein and her associates, contend that the Federal and State Constitutions guarantee them the same right to benefit from position bias as the incumbents. “Briefly stated, it is petitioners’ position that the Amendment violates the equal protection clauses of the New York and Federal Constitutions by conferring on incumbents the advantage of being first on the ballot.”
The court does not agree. Petitioners have no inherent or legal right to have the position of their names on the ballot determined by lot, as they contend.
The precise claims advanced here by petitioners were made before the United States District Court for the Eastern District of New York (Travia, D. J.) on May 1, 1970 in Halperin v. State (70 Civ. 537). In an as yet unpublished but filed decision, Judge Travia not merely denied plaintiff’s application there for a three-Judge court [compulsory where the constitutionality of a State statute is challenged in a suit seeking to enjoin execution of its terms by State officers (U. S. Code, tit. 28, § 2281)], but he also dismissed the complaint containing the same claims of deprivation of equal treatment and due process, by reason of the same statute challenged here, on the specific ground there was no substantial constitutional question. A State may always enact laws which reasonably regulate the electoral process (Williams v. Rhodes, 393 U. S. 23, 29 [1968] ; Kramer v. Union School Dist., 395 U. S. 621, 625 [1969] ), provided, of course, the laws are “ for a legitimate purpose and reasonably adapted to effect the purpose ” (Matter of Burr v. Voorhis, 229 N. Y. 382, 396 [1920]). Minor differences in the application of laws to different groups do not necessarily deny equal protection of the law (Williams v. Rhodes, supra, p. 30), except where the distinctions and classifications are invidious and arbitrary (Avery v. Midland County, 390 U. S. 474, 484 [1968]) or unreasonable in the light of the purpose sought to be achieved (Carrington v. Rash,, 380 U. S. 89, 93 [1965] );
Paraphrasing the language of Mr. Justice Whittaker delivering the opinion of the Supreme Court in Allied Stores of Ohio v. Bowers (358 U. S. 522, 528-529), this court cannot assume that the Legislature’s decision to place an incumbent’s name on the first line was adopted arbitrarily or without good reason to further some legitimate policy of the State. What were the special reasons, motives or policies of the Legislature for placing the incumbent’s name on the first line instead of leaving the incumbent’s position to be selected by a lottery, this court *225 does not know with certainty; nor is it important that it should (Southwestern Oil Co. v. Texas, 217 U. S. 114, 126), for a Legislature need not declare its purpose (Allied Stores of Ohio v. Bowers, supra, p. 528).
It is obvious that it may reasonably have been the purpose and policy of the Legislature to move towards reform in the election machinery process by experimenting for one year, in the City of New York, with a system of placing a candidate’s name on the ballot, other than by lottery or the cumbersome and expensive device of rotating the order of the names in the various election districts within the political unit.
Mr. G-eorge Hallet, Executive Secretary of the Citizens Union, in a public document dated January 12, 1970, entitled “ Reform of the Primaries ” has recommended to the Legislature the very reform which petitioners now attack. Mr. Hallet states (in concluding his memorandum):
“ 3. Order on the Ballot.
‘ ‘ At present the order of the names of candidates on primary ballots is determined by lot. There is ample evidence that the resulting order often has a great deal to do with the outcome, even sometimes actually nominating candidates who would obviously have had little chance if they had not drawn first place. The nomination and often the subsequent election, of a person to public office, or his election to party position, ought to have some more substantial basis than a lottery.
“ Three different proposals appear to offer such a basis:
‘ ‘ 1. The order under each office might be alphabetical, with the list rotated from election district to election district, as in the New York City elections of community school boards, so as to give each candidate his turn at the top place and each other position on the ballot. This plan creates extra work and some extra expense for the election authorities and somewhat complicates the problems of campaigning because the ballots will not look exactly the same in all polling places, but it equalizes the advantage of position on the ballot more successfully than other plans.
“ 2. An incumbent might always be given first place on the ballot. This does not equalize the advantage of position, but has a reasonable basis. The incumbent has been elected by the voters and made a record that he should be judged by before he is turned out of the office and made to terminate his public service and to make other arrangements. Every primary involving an incumbent is in part a vote of confidence or no-confidence in the incumbent, which is not true of other candidates. This aspect of the vote is spotlighted if the incumbent is put first.
*226 “3. If the challenge primary principle is in effect, as it is for statewide offices, the candidate designated by the appropriate party committee before the designating petition period might be given first place on the ballot. This would always identify by first position the person recommended by the elected leadership of the party and the other candidate or candidates as the challengers.
‘ ‘ Alternatives 2 and 3 could be combined, giving first place to the incumbent if there is one and first place to the choice of the party committee otherwise.
“Any of these alternatives would determine the advantage of position on the ballot on a basis more rational than mere chance.” (Italics supplied)
Therefore, this court cannot say that giving an incumbent first place on the ballot was not founded upon a reasonable distinction, or difference in State policy, or that no state of facts reasonably can be conceived to sustain it. For those reasons it cannot be said that the questioned advantage to incumbents is invidious or palpably arbitrary and denies petitioners the equal protection of the laws within the meaning of the State and Federal Constitutions.
The court has carefully considered the other objections urged by petitioners and finds them without merit.
The Attorney-General’s cross motion is granted and the petition is dismissed.