**James WALSH, who brings this action on behalf of himself and all others similarly situated, Plaintiffs, Appellants,**

v.

**COMMONWEALTH OF MASSACHU-SETTS and Arthur M. Mason, Defendants, Appellees.**

No. 79–1601.

United States Court of Appeals, First Circuit.

Argued March 10, 1980.

Decided April 11, 1980.

Mark I. Zarrow, Worchester, Mass., with whom Harry Zarrow, and Yagjian, Zarrow, George, O'Connor & Lian, Worchester, Mass., were on brief, for appellants.

Scott A. Smith, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for appellees.

Before COFFIN, Chief Judge, CAMP-BELL, Circuit Judge, WYZANSKI, Senior District Judge.*

WYZANSKI, Senior District Judge.

The question presented is whether the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the Commonwealth of Massachusetts from paying district court officers working in courts of the commonwealth outside Suffolk County on the basis of a lower classification in a state-wide salary scale than the classification in that scale applied to officers working in courts of the commonwealth within Suffolk County.

Alleging jurisdiction under 28 U.S.C. § 1331, Walsh, the Chief Court Officer of the Brookline Municipal Court, a district court in Norfolk County, in behalf of himself and all district court officers working in courts of the Commonwealth of Massachusetts outside of Suffolk County, brought this action against the commonwealth and Arthur M. Mason, Chief Administrative Justice of the Trial Court of Massachusetts. The complaint alleges that, in violation of the equal protection clause of the Fourteenth Amendment,[1] "the plaintiffs have been classified according to a statewide salary schedule into job groups numbered XIII and XV whereas the court officers working in the District Courts located in Suffolk County have been classified in the same schedule in job groups XIII and XXIV. The salaries specified for job groups XII and XV are far less than the salaries for job groups [XIII and XXIV]."[2] Plaintiffs seek damages, an order requiring future equality in salaries, and a declaration that the classification was unconstitutional. Upon de-fendants' motion, the district judge dismissed the complaint for failure to state a cause of action.[3]

The parties agree that this case arises in the following undisputed context of Massachusetts law and practice.

Before 1978 Massachusetts had a county court trial system. Under that system, Massachusetts district court officers were appointed by county sheriffs, were paid out of county treasuries, and for most purposes were regarded as county employees. Mass. G.L. c. 35, §§ 49–56. Cf. *Dolan v. County of Suffolk*, 310 Mass. 318, 37 N.E.2d 998 (1941). But see *McCarthy v. Sheriff of Suffolk County*, 366 Mass. 779, 322 N.E.2d 758 (1975). At that time the commonwealth established a state-wide scale of compensation with different classifications, but gave authority to the county officials, or in Suffolk County their equivalent, to determine in which classification to place the district court officers of their own county. Mass.G.L. c. 35, §§ 49–56. At that period the appropriate authorities of Suffolk County placed its district court officers in classifications which called for pay higher than the classifications in which authorities in other counties placed their district court officers.

In 1978 Massachusetts enacted a comprehensive court reorganization act. Mass.G.L. c. 29A St.1978, c. 478. Under that act the commonwealth rather than the county became the employer of district court officers and paid their salaries. The act provided that district court officers should continue to serve without reduction in compensation. St.1978, c. 478, § 328. But the act did not itself establish wage scales or classifications, nor did that act provide a procedure

* Of the District of Massachusetts, sitting by designation.

1. Although the complaint refers to "the civil rights, due process rights, and equal protection rights" of plaintiffs neither the briefs nor the oral arguments addressed any constitutional question except such as might arise under the Equal Protection Clause of the Fourteenth Amendment. If there were any other constitutional questions we regard them as abandoned.

2. By inadvertence, the complaint refers to groups XIII and XV instead of XXII and XXIV.

3. Although the district judge in dismissing the complaint referred primarily to the failure of plaintiffs to exhaust remedies made available to them by the collective bargaining agreement governing their employment, defendants did not rely upon this exhaustion theory, and they and we have considered whether there are other reasons why the complaint failed to state a cause of action.

for determining the compensation of district court officers.

Meanwhile, by St.1977, c. 278 Massachusetts authorized district court officers to engage in collecting bargaining. That 1977 act provided that the appropriate bargaining unit "shall be a professional unit composed of all probation officers and court officers" *Ibid.*, § 3. However, thereafter St.1978, c. 478, § 76 provided that "court officers in the superior court department for Suffolk and Middlesex counties shall be represented by such other bargaining units as they may elect."

Representatives of the district court officers and the Chief Administrative Justice of the Trial Court of Massachusetts, acting under G.L. c. 150E, § 1 as amended by St.1977, c. 278, § 2, entered into one or more collective bargains, currently in force, which provide rates of compensation which are higher for district court officers in Suffolk County than for district court officers in other counties.

Whether we look only at the face of the complaint or also take into account the undisputed context in which this action arises, we reach the conclusion that plaintiffs have not shown that defendants have denied them the equal protection of the laws.

We shall assume that the state itself, by authorizing the Chief Administrative Justice of the Trial Court to execute a bargain which provides a lower wage scale for district court officers outside of Suffolk County than the district court officers in Suffolk County, has placed in different compensation classifications Suffolk County and other county district court officers.

The shortest way of disposing of this complaint is to note that it erroneously assumes that a distinction drawn upon strictly county lines is on that account a violation of the Equal Protection Clause. But "the Equal Protection Clause relates to equality between persons as such, rather than be-

tween areas . . . territorial uniformity is not a constitutional prerequisite." *McGowan v. Maryland,* 366 U.S. 420, 427, 81 S.Ct. 1101, 1106, 6 L.Ed.2d 393 (1961), (per Warren C. J.) Accord: *Salsburg v. Maryland,* 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954). Equal Protection of the laws means that "no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances." *Missouri v. Lewis,* 101 U.S. 22, 31, 25 L.Ed. 989 (1879). "As respects the administration of justice, [each state] . . . may establish one system of courts for cities and another for rural districts, one system for one portion of its territory and another system for another portion." *Ibid.*, pp. 30–31. Thus it is not a violation of the Equal Protection Clause for Massachusetts to provide for Suffolk County court officers a salary classification different from the salary classification applicable to court officers of other counties, because the line of distinction is both in form and in substance nothing but geographical.

Since a disposition of this case solely on the ground that the challenged discrimination is geographical might be thought too mechanical, lacking in sensitivity to recent developments in the law with respect to equal protection,[4] and not responsive to the approach characteristic of the most recent Supreme Court cases[5] involving state economic regulation, we shall give additional reasons for our conclusion that the complaint in this action fails to state a cause of action.

Where the equal protection clause is invoked to challenged state action in awarding economic benefits, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis', it does not offend the Constitution . . . ." *Dandridge v.*

---

4. See Developments in the Law—Equal Protection—82 Harv.L.Rev. 1065 (1969), Tussman & tenBroek, The Equal Protection of the Laws, 37 Calif.L.Rev. 341 (1949), Tribe, American Constitutional Law (1978) ch. 16, p. 990, *et seq.*

5. See especially *City of New Orleans v. Dukes,* 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) overruling *Morey v. Doud,* 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957).

*Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). In *City of New Orleans, et al. v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976), the Supreme Court said at p. 303, 96 S.Ct. at pp. 2516–17 "When local economic regulation is challenged solely as violating the Equal Protection Clause, this Court consistently defers to legislative determinations as to the desirability of particular statutory discriminations . . . Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of statutory discriminations and require only that the classification challenged rationally be related to a legitimate state interest." Compare *Vance v. Bradley*, 440 U.S. 93, 109, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979); *Friedman v. Rogers*, 440 U.S. 1, 17, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979); *Dieffenbach v. Attorney General of Vermont*, 604 F.2d 187, 195 (2nd Cir. 1979).

In considering whether a discrimination in salary payments to Suffolk County district court officers and other district court officers was reasonable or rationally related to a legitimate state interest, we do not need to take evidence, nor do we need the guidance of explicit declarations of purpose by the state. Cf. *City of New Orleans v. Dukes, supra, Kotch v. Board of River Port Pilot Commissioners*, 330 U.S. 552, 563, 67 S.Ct. 910, 915, 91 L.Ed. 1093 (1947). We should uphold any classification based "upon a state of facts that reasonably can be conceived to constitute a distinction, or difference in state policy." *Allied Stores v. Bowers*, 358 U.S. 522, 530, 79 S.Ct. 437, 443, 3 L.Ed.2d 480 (1959).

In the light of the methodology used in the cases just cited,[6] we conclude that the

Commonwealth of Massachusetts could have reasonably distinguished between the rate of payment for court officers in Suffolk County and other court officers on the ground that it "reasonably can be conceived" that the duties of maintaining order in the City of Boston, or the risks of violence in the largest city in New England, or the number of spectators who attend court sessions in the capital city, or the high wage scales in both private and public employment in the state's metropolis, furnish a basis for paying higher rates in Suffolk County than elsewhere.

We find it unnecessary to consider whether the distinction in salary rates may also be sustained on the grounds that it finds its origin in a constitutionally permissible distinction established when Suffolk officers and other officers had different employers, and has been approved by plaintiffs' collective bargaining representatives not alleged to have acted in bad faith or to have effectuated a discrimination other than a geographical one.

*Affirmed.*

6. Tribe, American Constitutional Law (1978) § 16–3, p. 996 observes that:

"In applying the rationality, requirement, the Court has ordinarily been willing to uphold any classification based 'upon a state of facts that reasonably can be conceived to constitute a distinction, or difference in state policy . . . .' [*Allied Stores v. Bowers*, 358 U.S. 522, 530, 79 S.Ct. 437, 442, 3 L.Ed.2d 480 (1959)] This remarkable deference to state objectives has operated in the sphere of economic regulation quite apart from whether the conceivable "state of facts" (1) actually exists, (2) would convincingly justify the classification if it did exist, or (3) has ever been urged in the classification's defense by those who either promulgated it or have argued in its support. Often only the Court's imagination has limited the allowable purposes ascribed to government."