ALLEN, Judge.
Physicians licensed by the Florida Department of Professional Regulation brought actions against the appellees challenging the constitutionality of the funding prescribed for the Florida Birth-Related Neurological Injury Compensation Plan (Plan) created by Chapters 88-1 and 88-277, Laws of Florida. The physicians contended that since they did not provide obstetrical services they would receive no more benefit from the Plan than any other member of the general public. Consequently, they argued that their rights under the due process and equal protection guarantees of the federal and state constitutions were violated when they were called upon to contribute to the Plan, where no such requirement was placed upon the general public. They also alleged that the statute contains an unlawful delegation of the taxing authority. This appeal is from a judgment in favor of appellees on all issues. We affirm.
Chapter 88-1, Section 60, now codified as Section 766.301, Florida Statutes (1989), sets forth findings in support of the legislation as follows:
766.301 Legislative findings and intent (1) The Legislature makes the following findings:
(a)Physicians practicing obstetrics are high-risk medical specialists for whom malpractice insurance premiums are very costly, and recent increases in such premiums have been greater for such physicians than for other physicians.
(b) Any birth other than a normal birth frequently leads to a claim against the attending physician; consequently, such physicians are among the physicians most severely affected by current medical malpractice problems.
(c) Because obstetric services are essential, it is incumbent upon the Legislature to provide a plan designed to result in the stabilization and reduction of malpractice insurance premiums for providers of such services in Florida.
(d) The costs of birth-related neurological injury claims are particularly high and warrant the establishment of a limited system of compensation irrespective of fault.
(2) It is the intent of the Legislature to provide compensation, on a no-fault basis, for a limited class of catastrophic injuries that result in unusually high costs for custodial care and rehabilitation. This plan shall apply only to birth-related neurological injuries.
A portion of Chapter 88-1 created the Plan, which provides a no-fault compensation system for certain neurologically injured infants. The Plan’s financing scheme, found in Section 73 of Chapter 88-1, as amended by Sections 39 and 41 of Chapter 88-277, Laws of Florida, codified as Section 766.314, Florida Statutes (1989), calls for payments from hospitals, physicians, the Insurance Commissioner’s Regulatory Trust Fund, and, in certain circumstances, casualty insurance carriers. Physicians who practice obstetrics either full-time or part-time can participate in the Plan by paying an initial and annual assessment of $5,000. Physicians, such as the appellants, who do not practice obstetrics and cannot participate, are required to pay an initial and annual assessment of $250. The section also authorizes the Department of Insurance to proportionally increase assessments in order to maintain the Plan on “an actuarially sound basis.”
*179 The appellants first contend that they receive no greater benefit from the Plan than other members of the general public. Therefore, they argue that there is no rational basis for singling out their class of nonparticipating physicians for contribution to the Plan. They assert that use of the classification is arbitrary and discriminatory in violation of the due process and equal protection guarantees of the federal and state constitutions.
In Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311 (Fla.1984), appeal dismissed, 474 U.S. 892, 106 S.Ct. 213, 88 L.Ed.2d 214 (1985), the Florida Supreme Court established the standard of review by which tax legislation, challenged on the same constitutional grounds raised by appellants, is to be evaluated. The court said the following:
When the state legislature, acting within the scope of its authority, undertakes to exert the taxing power, every presumption in favor of the validity of its action is indulged. Only clear and demonstrated usurpation of power will authorize judicial interference with legislative action. Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660 (1954). In the field of taxation particularly, the legislature possesses great freedom in classification. The burden is on the one attacking the legislative enactment to negate every conceivable basis which might support it. Madden v. Kentucky, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940); Just Valuation & Taxation League, Inc. v. Simpson, 209 So.2d 229, 323 (Fla.1968). The state must, of course, proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. Department of Revenue v. AMREP Corp., 358 So.2d 1343, 1349 (Fla.1978). A statute that discriminates in favor of a certain class is not arbitrary if the discrimination is founded upon a reasonable distinction or difference in state policy. Allied Stores v. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959).
Id. at 314.
Recognizing the standard of judicial review explicated in Eastern Air Lines, Inc. v. Department of Revenue, the court looked at legislative history and other evidence presented at trial to determine whether there was a rational basis for the legislature to have called upon physicians not practicing obstetrics to contribute to the Plan. In doing so, the trial court found that Chapters 88-1 and 88-277, Laws of Florida, were enacted in response to a medical malpractice crisis which engulfed our state, severely disrupted the delivery of health care services, and adversely affected all Florida physicians. Further, evidence was presented that health care services are delivered by a team of providers, all of whom interact and depend upon one another, and that a breakdown in one area of service impacts other areas. The trial court found and held as follows:
Since one of the goals of the Plan is to help alleviate the crisis and permit the efficient delivery of health care services by all members of the team, plaintiffs are undeniably related to at least one of the goals of the Plan and stand to benefit from its realization. * * * Thus, the Legislature’s decision to require plaintiffs to contribute to the Plan was not wholly unreasonable, arbitrary, or capricious.
We find that there was ample factual basis for the trial court’s holding on this issue. Consequently, we reject the appellants’ due process and equal protection arguments.
The appellants also contend that the statutory authorization for the Department of Insurance to proportionally increase assessments to maintain the Plan is an unlawful delegation of legislative taxing power. They argue that the “actuarially sound” standard set forth in the statute is insufficient to enable the Department of Insurance and the courts to determine whether the legislative intent is being implemented. Because of the Supreme Court’s holding in Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815 (Fla.1983), appeal dismissed, 466 U.S. 901, 104 S.Ct. 1673, 80 L.Ed.2d 149 (1984), we must reject the appellants’ argument on *180 this point. There, the Supreme Court held the “actuarially sound” standard sufficient to satisfy constitutional requirements.
We also find the appellants’ remaining arguments to be without merit.
Consequently, the trial court’s final judgment upholding Section 73 of Chapter 88-1, as amended by Sections 39 and 41 of Chapter 88-277, and codified as Section 766.314, Florida Statutes (1989), against the various constitutional challenges raised by appellants is affirmed.
ZEHMER and MINER, JJ., concur.