Dear Mr. Caldwell:
You have requested an opinion regarding objections raised by an insurer to the municipal license tax imposed on them by R.S. 22:1076. Specifically, these objections allege that R.S.22:1076 violates the Equal Protection Clause of the United States Constitution as decreed by the Supreme Court of the United States in its ruling in Metropolitan Life Insurance Company vs. Ward, 105 S.Ct. 1676 (1985).
It is the opinion of this office that R.S. 22:1076 meets all necessary Constitutional tests and is therefore lawful and enforceable.
The statute in question reads in pertinent part as follows:
Art. 1076. Authorization of local license taxes
 Any municipal or parochial corporation in the state shall have the right to impose a license tax on any insurer engaged in the business of issuing any form of insurance policy or contract, which may now or hereafter be subject to the payment of any license tax for state purposes, as provided in this Part, as follows:
* * *
 B. On any insurer, engaged in the business of issuing policies, contracts, or other forms of obligations covering the risk of fire, marine, transportation, surety, fidelity, indemnity, guaranty, workers compensation, employers' liability, property damage, live stock, vehicle, automatic sprinkler, burglary, or insurance business of any other kind whatsoever in this state, whether such insurer is operating in this state through agents or other representatives or otherwise, not more than the following:
* * *
 The maximum license tax on such businesses, payable to such municipality or parochial corporation by any insurer, shall not exceed nine thousand dollars . . . provided further, that the amount of license payable to any municipal or parochial corporation as fixed in this Section, shall be one-third of the amount so fixed if the payer shall file a sworn statement with the annual report required by this Part, showing that at least one-sixth of the total admitted assets of the payer, less assets in an amount equal to the reserves on its policies issued in foreign countries in which it is authorized to do business and which countries require an investment therein as a condition of doing business, is invested and maintained, either in bonds of the state, or in bonds of municipal, school, road or levee district, or other political subdivision of this state, or in mortgages on property located in this state, or in real property in this state which shall be requisite for the convenient accommodation of the transaction of its own business, or in policy loans, or other loans to residents of this state, or to corporations organized under the laws of this state and domiciled in this state, or in stock of homestead building or loan associations organized under the laws of this state, to the extent such stock is guaranteed or insured by the Federal Deposit Insurance Corporation or other federal or state agency. (Emphasis added)
* * *
By the simple expedient of reference to the plain language of the statute itself, it is clear that the provisions apply to all insurers, not merely to foreign corporations as asserted by those objecting the payment of the tax. Since the statute makes no "prima facie" distinction between foreign and domestic insurers, we must examine 1) whether or not the terms of the statute constitute a "de facto" distinction between foreign and domestic insurers and, if so, 2) whether or not that distinction is a "legitimate state purpose".
The terms of R.S. 22:1076 require that an insurer that wishes to qualify for the lower tax treatment must have invested one-sixth (1/6th) of its total admitted assets, less foreign reserve, within the state of Louisiana. It is understandable that a foreign or alien insurer that wishes to begin doing business in Louisiana will be at a comparative tax disadvantage unless it invests one-sixth of its assets in Louisiana. However, the same is true of any insurer, of which there are a number, that is domiciled in Louisiana but maintains most (more than one-sixth) of its assets outside of the state. The worst that can therefore be said about this statute is that it discriminates between companies that have less than one-sixth (1/6th) of their assets within the state and those that do not.
Since this regimen creates an economic distinction we will go farther and look at the second part of the question . . . is the purpose of the statute a "legitimate state interest"?
The interest of the state is clearly to grant favorable tax treatment to insurers that invest in the state of Louisiana and, concomitantly, to encourage the bringing of new business into the state of Louisiana. Is this purpose constitutionally permissible? It is. In the case of Allied Stores of Ohio, Inc. vs. Bowers, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959) the United States Supreme Court specifically upheld the validity of the principal that a state has a legitimate purpose in bringing new business into its boundaries. The Allied case is specifically cited to this end by the Supreme Court in the Metropolitan case, supra, at page 1682.
Metropolitan, supra, can and should be cited as authority upholding R.S. 22:1076. That case held unconstitutional an Alabama statute which clearly discriminated against foreign corporations that there was no possibility of a foreign corporation ever enjoying the same tax status as a domestic one. The Louisiana statute does not establish an arbitrary distinction but indeed, treats both equally.
We hope that this answers your questions concerning this statute. If we may be of further assistance to you in any way, please feel free to contact us.
Very truly yours,
 RICHARD P. IEYOUB Attorney General
 BY: CAREY RAUHMAN HOLLIDAY Assistant Attorney General
RPI/CRG:bys