RUCKER, Justice,
dissenting.
I am not persuaded that the City has advanced a rational basis for its classification between property owners who chose to pay their Barrett Law assessments in a lump sum and those who elected to pay in installments. Instead, I am of the view that Resolution 101 violates the Equal Protection Clause of the United States Constitution as applied to the homeowners in this case. Therefore I respectfully dissent.
The government has broad discretion to draw lines classifying persons for purposes of disparate treatment. FCC v. Beach Commc’ns, Inc., 508 U.S. 307, 315-16, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). “But there is a point beyond which the State cannot go without violating the Equal Protection Clause.” Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 527, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959). Specifically, a government classification may not be capricious or arbitrary and “must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.” Id. at 527, 79 S.Ct. 437 (internal quotation marks and citations omitted).
Supreme Court jurisprudence teaches that a legislative body is not required to articulate its reasons for enacting a statute. Beach Commc’ns, 508 U.S. at 315, 113 S.Ct. 2096; Nordlinger v. Hahn, 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). But, when a legislature does state a reason for a statutory classification, the *571 stated reason must be rationally related to the classification made. In such circumstances, it is inappropriate to consider other conceivable or even expressed rationales for the purpose of “saving” an inadequately justified classification. See Allied Stores, 358 U.S. at 530, 79 S.Ct. 437 (recognizing that where statutes “specifically declared their purpose” they “left no room to conceive of any other purpose for their existence”); cf. Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 463 n. 7, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981) (“In equal protection analysis, this Court will assume that the objectives articulated by the legislature are actual purposes of the statute, unless an examination of the circumstances forces us to conclude that they could not have been a goal of the legislation.” (internal quotation marks and citation omitted)).
As the majority points out, Resolution 101 itself included the City’s rationale for treating the Homeowners differently from other similarly situated property owners in Northern Estates, namely “because Barrett Law funding imposed financial hardships on middle- and low-income property owners who were often most in need of sanitary sewers due to failing septic systems.” Op. at 562. More specifically the Resolution provided:
Whereas, The Board of Public Works (Board) is authorized by Indiana Code (IC) 36-9-39 to administer ‘Barrett Law Funding for Municipal Sewer’ program under which the Board approves all Barrett Law projects within the City of Indianapolis-Marion County, including [an] individual assessment amount per parcel, and
Whereas, The Barrett Law Funding for Municipal Sewer program may present financial hardships on many middle to lower income participants who most need sanitary sewer service in lieu of failing septic systems, and Whereas, The Department of Public Works (DPW) has a proposed rate and fee increase package to the City-County Council for approval to continue to address the re-capitalization, expansion, operation and maintenance, and regulatory requirements of the City’s sanitary sewer system which was approved by the City-County Council on October 31, 2005 (Proposal No. 535 as amended) effective on January 1, 2006, and
Whereas, The financial model upon which Proposal No. 535 was based, considered the current assessments being made by participants in active Barrett Law projects as well as the future needs to eliminate leaking septic systems in all of the City of Indianapolis-Marion County in order to discontinue the use of Barrett Law Funding for Municipal Sewer program for the finance of sanitary sewers.
Now, Therefore, Be It Resolved that [the Board] hereby forgive[s] all assessment amounts it established pursuant to the Barrett Law Funding for Municipal Sewer program due and owing from the date of November 1, 2005[,] forward to the Department of Public Works via the Barrett Law Assessment Bureau.
Appellant’s App. at 350. For the most part this resolution expresses the City’s reasons for discontinuing the Barrett Law method of financing sewer projects in favor of the Septic Tank Elimination Program. However, merely declaring that Barrett Law funding “imposed financial hardships on middle- and low-income property owners who were often most in need of sanitary sewers due to failing septic systems,” does nothing to explain why the *572 City treated differently residents who elected to pay their assessments in a lump sum versus those who elected to pay in installments.
To be sure the City advanced multiple post-hoc rationalizations for the differential treatment.[1] But such arguments do not obviate the failure of the Resolution to pass rational basis scrutiny on the reasoning set forth in its text.
This is not a case like Clover Leaf, where the classification between plastic and non-plastic milk cartons satisfied equal protection concerns and there was evidence the legislature rationally believed the classification would further the stated objective of reducing solid waste, despite empirical evidence to the contrary. See Clover Leaf, 449 U.S. at 463-64, 469, 101 S.Ct. 716. Here, there is no indication that the Board even believed the classification would further its stated objective. The stated purpose in Resolution 101 simply fails to express any connection to the distinction between residents who elected to pay their assessments in a lump sum and those who elected to pay in installments. In my view this disconnect demonstrates that the classification fails to have “a fair and substantial relation” to the statutory objective. See Allied Stores, 358 U.S. at 527, 79 S.Ct. 437. I therefore agree with the Court of Appeals and would affirm the trial court’s grant of summary judgment in favor of the homeowners.
DICKSON, J., concurs.

. The Public Works Committee meeting minutes the majority cites at footnote 10 do appear to contain the reasoning of the director of the Department of Public Works for not reimbursing the homeowners, essentially because providing refunds would "simply be impossible.” Supra Committee Meeting Minutes at 10, as cited in Op. at 562 n. 10. This statement was made before the adoption of the Resolution, but I am not convinced this reasoning may be read in conjunction with the Resolution’s stated purpose. Even if it could be considered, it only addresses why the Homeowners were not reimbursed, not why the Resolution made the chosen classification. Further, it is merely the reasoning of the Director of the Department of Public Works given in response to a citizen’s question. There is no indication that such reasoning was adopted by the Board in Resolution 101. In addition the fact that most of these rationales were advanced during the course of this litigation, and nearly two and a half years after the Resolution was passed, renders them suspect in my view.