R. A. ORDWAY *v.* ISRAEL T. FARROW.

May Term, 1906.

Present:   ROWELL, C. J., TYLER, WATSON, POWERS, and MILES, JJ.

Opinion filed October 29, 1906.

*Equity—Bill to Redeem—Conditional Deed of Timber—Effect in Equity—Respective Rights of Parties After Condition Broken—Effect of Tender in Full After Condition Broken—Questionable Conduct of Grantor—Suits at Law—Injunction—Interest—Mortgages.*

It is a fundamental principle of equity jurisprudence that a person having a legal right shall not be permitted to use it to accomplish injustice.

In a suit in equity to redeem, it appeared that on December 17, 1900, the defendant conveyed to the orator all the timber on a certain lot, by a deed conditioned for the payment of the orator's note, due June 6, 1901, for a portion of the purchase money, and that the timber be removed within three years. The orator entered and removed some of the timber, but failed to pay the note at its maturity. On September 11, 1901, the orator made defendant a tender, which has since been kept good, of the amount then due, which the orator refused, saying that he had sold the property too cheap and wanted it back, claiming that the orator had forfeited all his rights by his default in payment. Subsequently the defendant notified the orator not to cut any more logs on the lot, and brought two suits at law against him for cutting thereon, both of which are still pending, one of them in the Supreme Court on the orator's exceptions. *Held*, that said conditions are conditions subsequent, and that the relation created between the parties, except as to the removal of the timber, does not differ in legal effect from that created by the ordinary conveyance of an absolute title with mortgage back to secure a portion of the purchase money.

Although the orator failed to pay the note at its maturity, and the legal estate thereby became vested in the defendant, the orator still had the equitable right to redeem, which right the defendant was bound to respect.

The forfeiture consequent on the orator's default of payment was designed merely as security for the enforcement of the obligation secured by the mortgage, and equity will require that it be not perverted to a different and oppressive purpose; and since it clearly appears that said suits at law, having been begun since said tender, were not brought either to enforce or to protect the security, the defendant will be perpetually enjoined from the further prosecution thereof and from availing himself of any advantage gained thereby.

Since the orator's equitable right of redemption could neither be heard nor determined in the suits at law, he cannot be barred of that right either by contesting those suits or by an adverse judgment therein.

By defendant's refusal of the tender and the retention of the legal title consequent thereon, the cutting of more timber by the orator was made a trespass at common law.

13

Regularly, when a grantor will take advantage of a condition broken, if he may enter, he must enter; and when he cannot enter, he must make claim, for a freehold and inheritance shall not cease without entry or claim.

But here, the conditional estate was so related to the fee that actual entry by the defendant for the breach could not be made; and if a claim was necessary, it was made when the defendant asserted a forfeiture .and forbade the orator cutting any more timber.

Defendant's refusal of the tender, and his subsequent action in claiming absolute ownership, with notice to the orator to cut no more logs on the lot, and the bringing of the suits at law for such cutting, place the defendant in the position of a mortgagee in possession holding adversely to the equitable right of the mortgagor; and, in the circumstances, such adverse holding was inequitable, oppressive, and in derogation of the orator's rights.

It is a general rule of the common law that if a condition subsequent be possible at the time when it was created, and afterwards became impossible by the act of the grantor, the estate of the grantee, being vested, is not thereby devested, but becomes absolute.

As the application of the above common law rule to this case would give the orator an unconditional title to the standing timber,which might work injustice to the defendant; and since the orator was prevented by the defendant from performing within the time limited, equity will regard the condition as without any specified time within which the timber should be removed, in which event the performance must be within a reasonable time; and it is left to the court of chancery to determine what constitutes a reasonable time in the circumstances.

Since the basis of the defendant's refusal to accept the tender is inequitable and unjust, he shall have no interest since the tender was made.

APPEAL IN CHANCERY. Heard on bill, answer, and master's report at the December Term, Caledonia County, 1905, *Munson,* Chancellor. Decree, "That the course taken by the orator—with full knowledge of all the matters affecting his rights—in submitting to a trial at law, taking the case to the Supreme Court, having the case continued there, and deferring the bringing of the bill until the case was about to

be heard, disentitles him to equitable relief; and it is therefore ordered and decreed that the bill be dismissed with costs." The defendant appealed.

On November 3, 1900, by a verbal agreement the orator agreed to buy, and the defendant agreed to sell to him, the standing timber on a certain lot in Walden, Vt., for $100, and the orator then paid defendant $5.00 on the purchase price and took from him a receipt reciting that fact. The orator had no great financial means, and he expected to cut and manufacture the timber on this and other lots and sell the same, and from the proceeds to pay the defendant, and the defendant understood this. On December 6, 1900, the orator gave defendant his six months promissory note for $95, the remainder of the purchase money. To this note was attached the following written memorandum signed by the orator:

"The above note is given for the balance of the purchase money for the standing timber on what is known as the Fletcher lot lying and situated at the north of Coles Pond in Walden, Vt. Said lot now belonging to said Israel T. Farrow, Jr. Said timber is to be and remain the property of said Israel T. Farrow, Jr., till above note and interest are paid in full."

After the above note was given, defendant was informed that such a note would not serve to hold the timber on the lot, and on December 17, 1900, he executed and delivered to the orator a deed, dated December 6, 1900, conveying to him the timber on said lot. This deed was conditioned as follows: "The condition of this deed is such, that if the said R. A. Ordway, his heirs or assigns shall well and truly pay or cause to be paid the said I. T. Farrow, Jr., his heirs or assigns one promissory note of even date herewith for the sum of $95, payable six months from date to Israel T. Farrow, Jr., with

interest from date and signed by said R. A. Ordway, and shall remove said timber within three years, then this deed shall remain in full force and effect but otherwise this deed to be null and void."

The orator took possession of the lot by doing some cutting thereon before December 6, 1900, and erected his mill near by, but did not get it into operation so soon as he expected, although he used reasonable efforts to do so, and in consequence he did not get the timber from the lot manufactured and sold so as to pay the note when it became due, July 6, 1901. On August 29, 1901, the parties met, and defendant then for the first time claimed that the orator had forfeited all his rights to the timber because he had not paid the note at its maturity, and forbade him to cut any more timber. Then followed the tender and the two suits mentioned in the opinion.

*J. P. Lamson* for the orator.

*Porter & Thompson* for the defendant.

A judgment against the orator in a suit at law, if insisted upon by the defendant, constitutes a conclusive bar in chancery. *St. Johnsbury* v. *Bagley*, 48 Vt. 76; *Burton* v. *Wiley*, 26 Vt. 430; *Briggs* v. *Shaw*, 15 Vt. 78; *Emerson* v. *Udell*, 13 Vt. 477; *Hempstead* v. *Watkins*, 42 Am. Dec. 696; *Haughy* v. *Strang*, 27 Am. Dec. 648; *Morrison* v. *Hart*, 4 Am. Dec. 663.

WATSON, J. By the defendant's conveyance of the timber, an estate was created and vested in the orator, the continuance of which depended upon the performance of the conditions, first, to pay the note described in the deed, and secondly, to

remove the timber within three years.    These are conditions subsequent,—Shep. Touch. 117; 4 Kent Com. 125,—and exclusive of the second, the relation created between the parties does not differ in legal effect from the ordinary case of conveyance of absolute title with mortgage back to secure a portion of the purchase money.    *Moulthrop* v. *Farmer's Mu. Fire Ins. Co.,* 52 Vt. 123; *Ford* v. *Steele,* 54 Vt. 562.

So far, the case is like a common action in equity to redeem.    Standing thus, the right of redemption is too clear to necessitate the citation of authorities.    It is contended, however, that this right is barred by the judgment in the first suit at law.    But that action was trespass and trover for cutting down and converting the timber, and the judgment was in damages for the stumpage value of the lumber cut after the legal title, by non-payment of the mortgage debt, became absolute in the defendant as mortgagee.    The question of the equitable right of redemption could neither be heard nor determined in that action.    Consequently this right can be barred neither by contesting the suit nor by the judgment.

It is said that redemption cannot avail the orator except he be granted time in which to remove the timber beyond the contractual limitation which has expired.    Hereon it is argued that the exercise by the defendant of his legal right to bring suits at law against the orator should not afford the latter an excuse for the non-performance of the condition in respect to the time in which the timber should be removed; and that the defendant should not be required to give further time, thereby having forced upon him a contract to which he never subscribed or assented.    But upon the facts found this is no answer to the orator's claim for relief in equity.    Notwithstanding the note was overdue and so the law-day of the mortgage passed, the orator had the equitable right to redeem by paying the sum

due with interest, which right the defendant was bound to respect.

On September 11, 1901, when the mortgage note was some more than three months overdue, and before any suit had been brought, the orator tendered to the defendant the amount then due, which the defendant refused to receive, claiming that he had sold the timber too cheap and did not want the pay, but wanted the property back, and that the orator had forfeited all right to it. And he claimed at the hearing before the master that the reason he did not accept the tender was because the timber had advanced in value, that he sold it too cheap, and wanted it back with pay for the stumpage of that which had been cut. The tender has been kept good. In equity ever after the tender was made, the defendant and not the orator was in default. Yet on June 26, 1902, the defendant brought his suit at law against the orator for trespass upon the freehold in cutting the timber, with a count in trover for a subsequent conversion of the timber cut. Pending that suit in the county court, and on November 20, 1901, the defendant by his attorneys notified the orator in writing not to cut any more logs or lumber on the lot in question, and not to sell or remove from the orator's millyard any of the logs or boards which had previously been cut on the lot, as the defendant claimed them all. The defendant prosecuted the suit to judgment in his favor at the following December term of county court. Exceptions were taken by the orator and the cause passed to this Court, where it is still pending. On July 24, 1903, the defendant brought another suit at law for trespass on the lot after the date of the writ in the first suit. This second action was pending at the time this bill was brought and is yet. The orator continued to cut timber until the trial of the first case in the county court, since which time he has done

no cutting. The time limited by the deed for removing the timber expired December 17, 1903. The master finds that there is now upon the lot two hundred thousand feet or more of timber which has not been cut, but which would have been cut by the orator within the time limited if the trespass suits had not been brought.

It is true as urged in argument that after forfeiture by default of payment at the time appointed, and after the tender was made, the legal estate was in the defendant and he had a legal right to bring and prosecute the suits at law. Nevertheless the forfeiture consequent on such default was designed merely as security for the enforcement of the obligation secured by the mortgage, and well settled principles of equity required that it be not perverted to a different and oppressive purpose. "Where a penalty or forfeiture," says Mr. Justice Story, "is designed merely as security to enforce the principal obligation, it is as much against conscience to allow any party to pervert it to a different and oppressive purpose, as it would be to allow him to substitute another for the principal obligation. The whole system of equity jurisprudence proceeds upon the ground that a party, having a legal right, shall not be permitted to avail himself of it for the purpose of injustice, or fraud, or oppression, or harsh and vindictive injury." 2 Story Eq. Jur. §1316.

The principles here enunciated apply with great force to the case in hand. Although at law the legal estate became absolutely vested in the mortgagee upon default, in equity the mortgage is a mere security for the debt, and only a chattel interest, and until a decree of foreclosure, the mortgagor continues the real owner of the fee. The legal title vests in the mortgagee merely for the protection of his interest, and in order to give him the full benefit of the security; but for other

purposes the mortgage is a mere security for the debt, and since default the mortgagor has had a right to redeem, which may be enforced in equity. "A mortgage is one thing at law and another in equity; in the one court it is an estate, and in the other a security only. * * Courts of law have so far adopted the principles of equity that they allow the legal title of the holder of the mortgage to be used only for the purpose of securing his equitable rights under it." 1 Jones Mort. sec. 11; 4 Kent Com. 11th ed. 173-177; *Barrett* v. *Sargeant,* 18 Vt. 365; *Hooper* v. *Wilson,* 12 Vt. 695. Lord Eldon said, at law a mortgagee is under no obligation to re-convey after the particular day of limitation, yet a court of equity says that though the money is not paid at the time stipulated, if paid with interest at the time a re-conveyance is demanded, there shall be a re-conveyance, upon the ground that the contract is considered in equity as a mere loan of money, secured by a pledge of the estate; that the agreement does not import at law once a mortgage, always a mortgage, but equity says that. *Seton* v. *Slade,* 7 Ves. 265.

Before forfeiture on the mortgage, the orator was in possession of the lot to the extent necessary for the purpose of his grant. Other than this, the possession remained in the defendant, as owner of the fee. Regularly when a grantor will take advantage of a condition, if he may enter he must enter, and when he cannot enter he must make claim, for the reason that a freehold and inheritance shall not cease without entry or claim. But if the grantor is himself in possession of the premises when the breach happens, the estate revests in him at once without any formal act on his part, and he will be presumed, after breach, to hold for the purpose of enforcing the forfeiture unless he waive the breach, which he may do. Co. Litt. 218, a; 1 Washb. Real Prop. * 452. The conditional

estate was so related to the fee that actual entry could not be made. Whether in the circumstances it was necessary for the defendant to make claim in consequence of the breach, we need not consider; for if the defendant's possession of the fee was equivalent to his re-entry, it was sufficient in law; and in case a claim be necessary, it was made when the defendant asserted a forfeiture and forbade the orator's cutting more timber. Let it be either way, an equivalent to a re-entry was had, and thenceforth the possession was in the defendant. But his possession has been in a sense in trust for the orator. Lord Hardwicke said, "it is certain the mortgagee is not barely a trustee to the mortgagor, but to some purposes, *videlicet,* with regard to the inheritance he certainly is, till foreclosure." *Casborne* v. *Scarfe,* 1 Atk. 603. See also *Dobson* v. *Land,* 8 Hare, 216; *Amhurst* v. *Dawling,* 2 Vern. 401.

It clearly appears from the facts found that the suits at law were not brought either to enforce or to protect the security. No occasion existed to bring them for such purpose, for the full amount of the mortgage note had been tendered the defendant, the tender had been kept good, and the money was subject to his call whenever he saw fit to take it. The refusal of the tender on the grounds stated, and the defendant's subsequent actions in claiming absolute ownership of the lumber with notice to the orator to cut no more logs on the lot, in bringing the suits for trespass on the freehold and obtaining judgment for damages in cutting timber after the tender was made, place the defendant in the position of a mortgagee in possession holding adversely to the equitable rights of the mortgagor, rather than in recognition of them, or in any sense in trust for him. In view of the condition in the deed making the orator's estate defeasible if the timber be not removed within the time specified, such adverse holding by the defend-

ant was inequitable, oppressive, and in derogation of the orator's rights in that respect. It is laid down by Sheppard that if a feoffer, after a feoffment of land made upon condition, enter and hold the possession only, by this the condition is suspended during his possession; and if he hold the possession so long that the feoffee cannot perform the condition, the condition is discharged forever. 1 Shep. Touch. * 158.

Moreover, by the refusal of the tender and the retention of the legal title consequent thereon, the cutting of more timber by the orator was made unlawful. This was established by the judgment against him in the suit at law for trespass in entering upon the land for that purpose, upon the recovery of which he ceased cutting. The removal of the timber within the time limited was therefore made impossible by the unconscionable actions of the defendant. "We can do that only which we can lawfully do" is a maxim here applicable. It is a general rule of the common law that if the condition subsequent be possible at the time when it was created, and becomes afterwards impossible by the act of the grantor, the estate of the grantee being once vested, is not thereby devested, but becomes absolute. After stating this rule, it is said by Lord Coke by way of illustration: "If a man make a feoffment in fee upon condition that the feoffee shall re-enfeoffe him before such a day, and before the day the feoffor disseise the feoffee, and hold him out by force until the day be past, the state of the feoffee is absolute, for the feoffor is the cause wherefore the condition cannot be performed, and therefore shall never take advantage for non-performance thereof. And so it is if A. be bound to B. that I. S. shall marry Jane G. before such a day, and before the day B. marry with Jane, he shall never take advantage of the bond, for that he himself is the mean that the condition could not be performed. And this is regu-

larly true in all cases." Co. Litt. 206, b. Upon the same doctrine Bacon says, "So, if a condition be to repair a house, he is excused thereof, if a stranger, by the command of the obligee himself, disturbs him, and will not suffer him to do it." Bac. Abr. tit. Conditions, (Q) 3. In 2 Greenleaf's Cruise, tit. 13,. ch. 2. sec. 21, 22, the same rule is laid down, with a statement of the holding in *Darley* v. *Langworthy*, 3 Bro. Parl. Ca. 359,. where Vincent Darley devised his estate, called Battins, to his sister for life. He also gave her the rents and profits of all his chattel estates for so many years as she should live, and she should choose to reside at Battins. The devise of the estate of Battins was afterwards revoked by the testator. It. was held that the devisee was entitled to the benefit of the chattel estates, discharged from the condition of living at Battins, which the revocation had put out of her power. Lord Comyns says that he who prevents the performance of a condition cannot avail himself of the non-performance. Com. Dig. tit. Condition, (L 6). See also Bac. Abr. (o) 3; 4 Kent Com. 130; *Davis* v. *Gray,* 16 Wall. 203, 21 L. ed. 447; *United States* v. *Arrendono,* 6 Pet. 691, 8 L. ed. 547; *Whitney* v. *Spencer,* 4 Cow. 39.

The application of the above rule at law, without modification, to the case before us would give the orator an unconditional title to the standing timber with no limitation as to time for its removal, other than that implied by law, an estate not contemplated by the parties and one which might work injustice to the defendant. The orator's estate created by contract was conditioned upon the removal of the timber, and its. character in this respect will not be changed by a court of equity. But since the orator was prevented by the defendant from performing within the time limited, he will be relieved in equity from the forfeiture consequent thereon, and as far as.

circumstances will admit, the parties will be restored to their original position under the contract. To this end equity will regard the condition as without any specified time in which the timber should be removed. And where no particular time is specified in which the condition shall be performed, the rule is that the performance must be within a reasonable time, according to the nature of the thing to be done. Com. Dig. tit. Condition, G. 5. In *Davis* v. *Gray* the non-performance of conditions subsequent within the time fixed because prevented by the State, was involved, and similar relief was granted in equity. See also *Battell* v. *Matot,* 58 Vt. 271. What will constitute a reasonable time in the circumstances of the case, however, will be left for the court of chancery to determine. No question is made but that the bill is sufficient for this purpose.

The question arises as to what effect the tender and its refusal have on the right of the defendant to subsequent interest. In England by a custom which, as affecting the claim for interest, has the force of law a mortgagee whose money is not paid on the day appointed is entitled to six months' notice from the mortgagor of his intention to pay off the mortgage, unless it be paid pursuant to a demand by the mortgagee, or an agreement entered into that it should be paid on a particular day. Consequently a tender before the expiration of the six months will not stop the running of interest during that time. The foundation of this custom seems to be that since redemption is a matter of equity only, a person seeking to redeem should do equity by allowing the mortgagee a reasonable opportunity to find other security on which to invest his money when he receives it. 2 Spence, Eq. 651; *Browne* v. *Lockhart,* 10 Sim. 421; Jones, Mort. sec. 1071.

But it is said by Mr. Jones that there is no such rule or custom in this country. Sec. 890, 1071. Certainly none obtains in this State. Notwithstanding the money was not paid or tendered on the day appointed, the orator had the right to redeem by payment or tender of payment subsequent thereto and at the time when he in fact made the tender, and the defendant should have accepted it. The defendant refused to receive the money and since that time he has been wholly in default,—the basis of his refusal is inequitable and unjust. In these circumstances he cannot in conscience have interest after the tender was made. *Blodgett* v. *Blodgett,* 48 Vt. 32; 2 Spence, Eq. 651; *Manning* v. *Burges,* Freem. ch. 174; *Lutton* v. *Rodd,* 2 ch. cas. 206; *Wiltshire* v. *Smith,* 3 Atk. 89.

Enough has already been said touching the purpose and effect of the suits at law to show that defendant should not be allowed to prosecute them further, or to avail himself of any advantage gained by them. "The court interferes on the principle of preventing a legal right from being enforced in an inequitable manner, or for an inequitable purpose." Set. Decr. 1st Am. ed. 161. It is laid down as a general proposition, "that in all cases where, by accident, or mistake, or fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is, therefore, against conscience that he should use that advantage, a court of equity will interfere, and restrain him from using the advantage which he has thus improperly gained;    * * *.   If any such unfair advantage has been already obtained by proceedings at law to a judgment, it will, in like manner, control the judgment, and restore the injured party to his original rights." 2 Story Eq. Jur. sec. 885; *Taylor* v. *Gilman,* 25 Vt. 411.

*Decree reversed and cause remanded with mandate.*